**In re Nathan H. WISE and Peggy A. Wise d/b/a Haughton Otasco C–151.**

**Bankruptcy No. 581–01480–S.**

United States Bankruptcy Court, W.D. Louisiana, Shreveport Division.

Oct. 4, 1983.

Walter E. Dorroh, Jr., Coushatta, La., for Bank of Coushatta.

Johnny E. Dollar, Monroe, La., for Nathan H. Wise and Peggy A. Wise.

LeROY SMALLENBERGER, Bankruptcy Judge.

## FINDINGS OF FACT

The issues before the Court are:

(1) Should the Court approve a motion filed by the debtors-in-possession (DIP) which seeks authority to convey items of collateral to the Bank of Coushatta in full satisfaction of the creditor's claim pursuant to a provision of the confirmed Plan of Reorganization?

(2) Should the Court grant the Bank's motion to order a conversion of the case under Chapter 7?

(3) Are the debtors-in-possession (DIP) entitled to the cost of these proceedings, including the attorney fees to defend against this action, from the Bank of Coushatta?

Nathan H. Wise and Peggy A. Wise, residents of Red River Parish, petitioned this Court for relief, under Chapter 11, Title 11 U.S.C., on December 14, 1981. Their case was a companion case to Modern Appliance Center, Inc., Case No. 581–04179–S. Orders for relief were entered in both cases on December 14, 1981.

The Plan in this case was confirmed by this Court, on September 21, 1982. The Bank of Coushatta, a secured creditor under the Plan, accepted the Plan of Reorganization.

At dispute between the parties is the meaning of the following provision of the Plan:

### Article VI

#### *Miscellaneous Provisions*

. . .2. *Notwithstanding anything* contained *above in this Plan,* the debtors reserve the right to abandon to any creditor on which the creditor holds a security interest thereon, any item of property retained by the debtors after confirmation, and receive full satisfaction of any claims secured by the liens on said abandoned property (which will have a result similar to a *dation en paiement* under Louisiana law in regard to said lienholder). To the extent such abandonment or sale results in a partial liquidation of the indebtedness, the reduction shall apply to principal and remaining balance shall be reamor-

tized over the period and at the interest rate in that respective class.

Since confirmation of the Plan, the DIP has transferred property to the Bossier Bank and Trust worth over $350,000, extinguishing approximately $496,890 in indebtedness. The debtors have made over one hundred (100) installments in the past twenty-one (21) months, pursuant to the Plan, amounting to more than $30,000, all from regular income.

The Bank of Coushatta, a secured creditor under the Plan, is the only creditor that has not yet been satisfied or is not being satisfied under the Plan. The DIP has attempted to turn over to the bank its collateral in full satisfaction of indebtedness, but the bank has resisted. The bank's position is that the above stated provision of the Plan (Article VI, paragraph 2) provides that the debtors are to remain personally liable for the deficiency of the debt after the turnover of the collateral. The DIP has now petitioned the Court for authority to turnover to the bank its collateral in full satisfaction of indebtedness to the bank.

A fact that also has some importance in this case is that under the confirmed Plan of Reorganization, creditors with an unsecured status, Class 8 under the Plan, received nothing in payment of their claims.

The Bank of Coushatta requests that the case be converted to a Chapter 7 Bankruptcy, alleging that the Plan of Reorganization has failed because: (1) the bank has not received the proposed payments under the confirmed Plan of Reorganization, and (2) that the DIP has not maintained adequate insurance on the collateral held by the Bank of Coushatta, less except the warehouse located on Ringgold in Coushatta.

The Bank of Coushatta also claims that if the case were converted to a Chapter 7 Bankruptcy that the bank would receive more in satisfaction of its claim. To support this claim the bank points out that the debtor's unencumbered stock in Modern Appliance Center, Inc., a corporation presently under Chapter 11 Bankruptcy Reorganization. The bank has already filed a motion to convert the Chapter 11 Bankruptcy Reor-

ganization of Modern Appliance Center, Inc., to a Chapter 7 Bankruptcy.

## CONCLUSIONS OF LAW

(1) Motion to Convey Collateral to a Secured Creditor in Full Satisfaction of Indebtedness

■ As stated in the facts, the disputed provision of the Plan is Article VI, paragraph 2.

The first sentence of this paragraph clearly allows the debtor to turnover any property to a creditor with a secured claim on said property in full satisfaction of the secured claim.

The bank maintains that the second sentence of this paragraph provides that to the extent such turnover would only partially reduce the debt, the remaining balance must be reamortized over a period of time called for by the Plan and paid by the debtors accordingly. The bank maintains that the second sentence of this paragraph provides that the debtors are to remain personally liable for the deficiency of the debt after the turnover of the collateral.

The Court disagrees with the interpretation that the bank places on the second sentence. The Court does *not* find that the second sentence precludes the DIP from accomplishing what the first sentence authorizes. The second sentence of the paragraph clearly provides a method whereby *part* of a creditor's collateral could be transferred to a creditor in *partial* satisfaction of the debt; the DIP could retain part of the collateral and avail himself of a *pro tanto* reduction in debt, reamortizing the remaining indebtedness.

There is an alternative means of viewing this issue than by focusing all attention on the meaning of Article VI, paragraph 2, sentence 2, of the Plan. If as the Bank of Coushatta claims, the secured creditor had a claim for the deficiency of the secured claim over the value of the collateral, then the deficiency claim would be an unsecured claim. Under the Plan, unsecured creditors were *not* paid anything on their claims.

Therefore, the secured creditor again would only receive the collateral which secured his claim, because under the Plan the unsecured part of his claim would not be paid.

For the reasons stated above, the Court approves the DIP's motion to convey to the Bank of Coushatta the items of collateral which secure the Bank's claims in full satisfaction of the indebtedness to the bank.

(2) Conversion of Case to Chapter 7

■ After reviewing the record, the Court does not find that a basis exists under Title 11 U.S.C. Section 1112(b) for converting this case to a Chapter 7 Bankruptcy. Once the conveyance of the items of collateral which secure the Bank of Coushatta's claims have been completed, the bank's claims will be fully satisfied under the Plan. Other creditors either have been or are being satisfied under the Plan; therefore, there is no basis for converting this case to a Chapter 7 Bankruptcy.

The Court is not convinced that the bank, as well as other creditors, will receive more from a liquidation, under Chapter 7 Bankruptcy, than under the Plan of Reorganization. However, under Title 11 U.S.C. Section 1129, if a class of one party accepts the Plan, the Court does not need to ask if that party would receive more upon liquidation before confirming the Plan. The Bank of Coushatta accepted the Plan, the Court approved the Plan; therefore, the Bank is bound by the Plan.

(3) DIP's Request for Cost of these Proceedings, Including Attorney Fees

■ The DIP contends that the indebtedness which is the subject of this litigation represents consumer debt. The DIP also contends that one facet of the bank's motion seeks a finding of the Court to determine that the personal liability of the debtors to the bank has not been discharged. Based on these contentions, the DIP argues that the Court has the power and authority pursuant to 11 U.S.C. Section 523(d) to grant judgment against the bank in favor of the DIP for costs including reasonable attorney fees for these proceedings.

The bank did not actually seek that the debtors' discharge in bankruptcy be set aside and the debtors held to be personally liable to the bank for the debt. The bank only said that, "... [I]f the debtors wish to turnover the collateral to Bank of Coushatta, and then be bound personally ... for the deficiency, then the bank is amenable to such arrangement". The bank did not seek that the debtors discharge in bankruptcy be set aside for any of the exceptions listed in 11 U.S.C. Section 523, but instead argued the meaning of the language of the Plan. Admittedly, the bank used inappropriate language in talking about personal liability of debtors. The Court overlooks the bank's inappropriate language, and finds that 11 U.S.C. Section 523 does not serve as a basis to award the DIP the costs including attorney fees for these proceedings.

The DIP contends that the bank wishes to have this case converted to a Chapter 7 Bankruptcy, so that the bank could gain control of the stock, in Modern Appliance Center, Inc., a corporation presently in Chapter 11 Bankruptcy. The DIP points out that the bank would then be in the position of stockholder and creditor of Modern Appliance Center, Inc., and would easily be able to force Modern Appliance Center, Inc., into liquidation, under Chapter 7 Bankruptcy. The DIP contends that the Court should find the bank in bad faith for seeking to prevent the successful reorganization of the debtors, and cites to the Court 11 U.S.C. Section 105 as authority for the Court to award the DIP costs including attorney fees in these proceedings.

■ The Court is not blind to the strategy of the bank. It is unfortunate that such litigation costs hender a successful reorganization by the debtors. However, strategy by a creditor does not necessarily constitute bad faith. Though the argument by the attorney for the DIP has some merit, the Court is not convinced that the showing of facts constitutes a basis for awarding to the DIP costs, including attorney fees for these proceedings.